CHARLES P. WHITTEMORE *vs.* JOHN W. WENTWORTH.

Somerset.    Opinion February 19, 1884.

*Statute of frauds.    Contract.    Evidence.    Account books.*

A promise by a third person to assume and pay a sum due to a creditor in consideration of the discharge of the original debtor, accompanied or followed by such absolute discharge, is an original and not a collateral promise, founded on a sufficient consideration, and need not be in writing.

While books of accounts are made competent evidence by the adverse party's notification to produce and his examination of them, they are still subject to

be impeached or controlled by evidence that the entries were not made in accordance with the directions given by an agent, whose books they purported to be, and what he said at the time of the reception of merchandise, credited upon the books, is to be regarded as part of the *res gestæ* relevant upon the question of the authenticity and value of the books as evidence. But declarations respecting those entries, not accompanying the making of the entries or of any of the transactions relating to them, are not admissible against his principal.

On exceptions and motion to set aside the verdict which was for the plaintiff in the sum of three hundred and two dollars and thirty-nine cents.

Assumpsit on an account annexed for merchandise sold and delivered. The writ was dated October 17, 1881, and the plea was the general issue.

The material facts are stated in the opinion.

*E. N. Merrill,* for the plaintiff, cited: *Woods* v. *Clark,* 24 Pick. 39; *Wilson* v. *Sherlock,* 36 Maine, 297; *Stewart* v. *Hanson,* 35 Maine, 509; *Corinth* v. *Lincoln,* 34 Maine, 312; *Gorham* v. *Canton,* 5 Maine, 267; *Bariny    Calais,* 11 Maine, 464; 1 Greenl. Ev. § 108; *Lund* v. *Tyngsborough,* 9 Cush. 41; 1 Addison, Contracts, § 210; *Lord* v. *Davison,* 3 Allen, 133; *Stone* v. *Augusta,* 46 Maine, 127; *Enfield* v. *Buswell,* 62 Maine, 128.

*John H. Webster and Wentworth,* for the defendant, cited: *Blake* v. *Parlin,* 22 Maine, 395; *Moses* v. *Norton,* 36 Maine, 113; *Rollins* v. *Crocker,* 62 Maine, 244; *Doyle* v. *White,* 26 Maine, 341; *Stewart* v. *Campbell,* 58 Maine, 439; *Russell* v. *Babcock,* 14 Maine, 138; *Winslow* v. *Kimball,* 25 Maine, 493; *Swift* v. *Luce,* 27 Maine, 285; *Brown* v. *Chesterville,* 63 Maine, 341; *Willis* v. *Hobson,* 37 Maine, 403; *Merrill* v. *Merrill* 27 Maine, 70; *Blake* v. *Russ,* 33 Maine, 360; *Craig* v. *Gilreth,* 47 Maine, 416; *Hazeltine* v. *Miller,* 44 Maine, 177; *Gooch* v. *Bryant,* 13 Maine, 386; *Haven* v. *Brown,* 7 Maine, 421; *Franklin Bank* v. *Steward,* 37 Maine, 519; *Burnham* v. *Ellis,* 39 Maine, 319; *Franklin Bank* v. *Cooper,* 39 Maine, 542; *Lime Rock Bank* v. *Hewett,* 52 Maine, 531; *Curtis* v. *Brown,* 5 Cush. 488; *Nelson* v. *Boynton,* 3 Met. 396; *Loomis* v. *New--

*hall,* 15 Pick. 159; *Richardson* v. *Williams,* 49 Maine, 558; *Whipple* v. *Wing,* 39 Maine, 424; *Linscott* v. *Trask,* 35 Maine, 150; *Sanborn* v. *Merrill,* 41 Maine, 467; *Edwards* v. *G. T. Ry,* 48 Maine, 379; S. C. 54 Maine, 105; 1 Greenl. Ev. 8 ed. § § 171, 180.

BARROWS, J. This case is presented upon motion to set aside the verdict as against law and evidence, and upon exceptions to certain instructions given to the jury, and to the admission of certain testimony against the defendant's objections.

The motion cannot prevail. The testimony produced by the plaintiff tends to show that he had furnished one Charles W. Wentworth, the defendant's brother, who kept a shop in Skowhegan, with butcher's meat until he owed the plaintiff more than $200; and the plaintiff hesitating to trust him farther, the defendant intervened and there was talk in the first place looking to the defendant's becoming surety for his brother, whereupon plaintiff called for a written guaranty, which defendant declined to give; but farther conference resulted in defendant's verbally requesting the plaintiff to furnish what beef his brother wanted until after haying, charging the same directly to the defendant and leaving bills therefor running to the defendant with the beef when delivered to the brother. And in like manner it was agreed that one lot which the plaintiff had brought at the defendant's request pending the negotiation but had charged to Charles should be charged over to the defendant and Charles credited with the amount, which was done. This part of the transaction is not denied by the defendant, nor that he ordered from the plaintiff certain other beef to be delivered to his brother and charged to himself. But he denies that this order and contract covered all the beef which plaintiff afterwards delivered to his brother up to the end of the haying season.

Yet while he denies the contract as claimed by the plaintiff and relies on the statute of frauds to relieve him from any verbal undertaking if made, there was more or less in the circumstances and in the subsequent acts and conduct of the parties and in the conversations between them that tended to weaken his denial before the jury and to strengthen the plaintiff's assertions.

His brother Charles who might be supposed to know the facts and to be favorably inclined towards him was not called as a witness in his behalf, and though his deposition had been taken by the defendant and was on the files of the court, it was not used. With the various corroborations of the plaintiff's position both positive and negative which the case presents, the jury were well justified in finding the contract as the plaintiff claimed, and their conclusion must be held final unless it was produced in whole or in part by some misdirection from the presiding judge.

Among the instructions not excepted to, the jury were told that "the inquiry in this case is whether this was a promise to pay the debt of Charles or a contract on the part of John W. Wentworth to incur a debt for the benefit of Charles." The distinction between an original and a collateral undertaking was pointed out and illustrated in further instructions to which no exceptions are taken; and the jury were finally told that "if the bargain was a mere collateral one simply to be responsible for the debt which Charles was to continue to contract with the plaintiff the defendant is not bound and would be entitled to the verdict. If the bargain was to become the original purchaser of the goods from that time and the plaintiff furnished the goods according to that contract, delivering them and the bills to the brother, he would be entitled to maintain the action."

The correctness of these instructions, or of the remark of this court in *Sanborn* v. *Merrill*, 41 Maine, 468, that "an individual may originally undertake to pay for services which are to be rendered or for goods which are to be delivered to another—the question in such cases is on whose credit the services are rendered or the goods delivered . . . and the promise need not be in writing," is not questioned by the defendant here and now. But he complains because the presiding judge went farther and instructed the jury as follows: "Mr. Foreman, if, knowing that you have delivered goods to one of my neighbors I choose to assume that debt as my own, and go to you and say 'if you will give that man credit for what you have charged to him and charge it to me,'—very well; it is proper and legitimate for me to do so, and when you have given the credit to him and trans-

ferred the charge to me—taken me as your debtor, instead of him —surrendered all the claim upon him, and look to me—that would be an original undertaking on my part for which there would be a sufficient consideration to bind me to keep the promise whether it was verbal or written." Keeping in mind the fact that the plaintiff discharged Charles altogether, and remembering the distinction between a collateral and a substituted promise, we think the instruction was susbtantially correct both upon principle and authority. *Wood* v. *Corcoran*, 1 Allen, 405 and cases there cited; *Lord* v. *Davison*, 3 Allen, 131, 133; *Jones* v. *Walker*, 13 B. Monroe, 357.

The radical difference between this case and *Richardson* v. *Williams*, 49 Maine, 558 is that there "there was no evidence that the plaintiff has either cancelled or discharged his claim upon (the original debtor) or assigned it to the defendant." This is the common feature in the cases cited for the defendant and they are consequently inapplicable to the case at bar. The distinction is made prominent in *Stewart* v. *Campbell*, 58 Maine, 439, cited for defendant.

The defendant held an assignment of all his brother Charles' accounts and demands, and was in possession of his books of account kept during the period covered by these transactions. Plaintiff gave him notice to produce them, and upon their production examined them. This gave defendant the right to offer them in evidence; *Merrill* v. *Merrill*, 67 Maine, 70, and cases there cited. They were put into the case by the defendant, and thereupon the plaintiff called one Groder, the clerk who made certain entries therein which the plaintiff desired to account for and control. The books derive all their probative force from the supposition that they are contemporary records made by, or under the direction of the defendant's brother during the progress of the business.

Groder's testimony (to the admission of which exception is taken) tends to show on the contrary that these entries were made by him as a clerk, newly employed, according to his own ideas of proper bookkeeping; and that when the attention of Charles W. Wentworth was called to them he directed the wit-

ness otherwise, giving the reason why these lots of beef should not be credited to the plaintiff on his books. As part of the *res gestæ* and accompanying the delivery of the beef, and bearing directly upon the credit to be given to or withheld from the books as evidence, we think Groder's testimony was competent including the reason which he says Charles Wentworth gave for his directions. *Stewart* v. *Hanson*, 35 Maine, 507, 510.

But the testimony of Brown was to similar declarations of Charles Wentworth not accompanying any part of the transactions to which the records in the books relate, though made during the time they were going on. They stand upon the footing of an agent's recital of a past transaction. We are of the opinion that inasmuch as Charles was not a witness, the defendant's objection to this testimony was well taken—that it should have been rejected as hearsay, and as it may have been accepted by the jury as substantive evidence of the facts stated by Charles Wentworth, and not merely as bearing upon the value of the books as evidence, its admission was prejudicial to the defendant, and that for this cause,

*The exceptions must be sustained*
*and a new trial granted.*

DANFORTH, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.